ROBERT D. REA,

     Plaintiff,

 -vs-              Case No. 6:07-cv-1444-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
_____

## MEMORANDUM OF DECISION

   Plaintiff Robert D. Rea ("Rea") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income payments ("SSI"). *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g)**.

## I.  BACKGROUND

   Rea was born on February 10, 1952, and alleges an onset of disability as of July 13, 2001. R. 51, 206.[1] On August 9, 2001, Rea filed an application for disability benefits and SSI. R. 51. Rea has a prior, non-related, hip injury following a motor vehicle accident in 1990. R. 104. Rea's education ended in the twelfth grade, and he did not receive a high school diploma or a G.E.D. R. 292. Rea's previous employment experience includes working as a telephone directory deliverer, maintenance engineer, retail receiving clerk, spray technician, temporary

---

[1] Rea originally alleged an onset date of November 15, 2000, but changed the onset date to July 13, 2001 at the February 17, 2004, hearing. R. 51, 206.

laborer, and a material handler. R. 77. In 2002, Rea was employed for a few weeks as a telephone directory deliverer, but his condition forced him to stop working. R. 293-94.[2]

Rea has a history of chronic alcohol abuse, including a DUI conviction in either 1998 or 1999 that resulted in the suspension of his driver's license for ten years. R. 104-10, 132-33, 137-38, 144, 154-57, 181, 292.[3] In 2002, Rea was convicted of driving on a suspended license and served approximately thirty days in the county jail. R. 177-87, 303. Rea has also been a chronic smoker since he was ten or eleven years old, smoking an average two packs of cigarettes a day. R. 104-10, 132-33, 137-38, 143, 145, 154-57, 296.[4]

A review of the objective medical record reveals that Rea suffers from chronic obstructive pulmonary disease ("COPD"), emphysema, cough syncope, epigastritis, and alcoholism. R. 104-45, 154-57, 171-75, 177-90.[5]

**Lee Memorial Hospital**

On July 13, 2001, Rea presented to the emergency room at Lee Memorial Hospital "with a history of breathing difficulty," and Rea was subsequently admitted to the hospital. R. 104. Rea reported that he had been suffering from breathing problems for the past eleven years. R. 106. In 1990, after surgery for his right hip injury, he was prescribed Theo-Dur "and other medications for his breathing," but Rea failed to regularly take his medication. R. 106. Rea was forty-nine years old at the time of his admission to the hospital. No earlier treatment records are

---

[2] In the Administrative Law Judge's ("ALJ") January 20, 2006 decision, Rea's 2002 employment was determined to be an unsuccessful work attempt and not substantial gainful activity. R. 224.
[3] During the second hearing on November 30, 2005, Rea testified that he stopped drinking after his 2001 hospitalization. R. 294. However, the medical record indicates that Rea continued to abuse alcohol throughout 2002. R. 154-57, 181.
[4] At the November 30, 2005 hearing, Rea testified that he quit smoking in September of 2005. R. 294.
[5] Syncope is a "[l]oss of consciousness and postural tone caused by diminished cerebral blood flow." *Stedman's Medical Dictionary*, 26th Ed. (1995).

provided in the record on appeal. The hospital's records reveal the following:

> The patient has a history of [COPD]. However, in spite of his lung trouble, he continues to smoke at least two-packs-a-day. For the past several weeks, he has been having increasing cough and wheezing. Few days ago, he slipped and fell, and sustained a blunt contusion of the left fifth rib cage. Because of these problems, he came to the Emergency Room and has been admitted. He denied any fever chills. He also was having some syncopal episode, particularly after a coughing spell. He would pass out for a few seconds and has had about 12 of them in the past two months. Review of systems was otherwise negative for any cardiac problem. . . . He also drinks four or five beers a day.

R. 104. After admission, Rea was treated with an Albuterol nebulizer for COPD and his condition improved. R. 104, 109. Tests confirmed the diagnosis of cough syncope. R. 104, 110-11. Rea was counseled concerning smoking cessation and he was discharged on July 18, 2001, with a prescription for Combivent, Azmacort, prednisone, and Tylenol for chest pain. *Id*. at 104-05.

### Dr. Acosta

On October 14, 2001, Rea presented to Dr. Alessandro L. Acosta at Wuesthoff Health Systems ("Wuesthoff") complaining of "chronic dyspnea and chronic bronchiectasic cough secondary to tobacco smoke." R. 132.[6] Rea was subsequently admitted to Wuesthoff. R. 133. Dr. Acosta's notes reveal that Rea continued to smoke two packs a day and drink alcohol on a daily basis. R. 132. Dr. Acosta's notes further reveal that Rea had lost his job months ago and, therefore, had been unable to refill his prescription for Combivent. R. 132. Upon physical examination, Rea appeared to be in mild to moderate respiratory distress. R. 132. Rea's lungs showed "very distant breath sounds with wheezing. . . ." R. 133. Dr. Acosta diagnosed Rea with

---

[6] Dyspnea is a "[s]hortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the hearth or lungs, occurs normally during intense physical exertion or at high altitude." *Stedman's Medical Dictionary*, 26th Ed. (1995).

acute exacerbation of [COPD], alcoholism, epigastritis, and an enlarged liver. R. 133. Dr.

Acosta provided Rea with a nebulizer, antibiotics, and IV fluids. R. 133.

**Dr. Hate**

On November 20, 2001, Rea presented to Dr. Nitin Hate complaining of the following:

> Gives a history of asthma diagnosed in July 2001 and states he
> never had asthma as a child, but developed it in adulthood, and has
> 5-6 asthma attacks a day. States he has also been diagnosed with
> emphysema and [COPD]. He smokes 2 packs of cigarettes a day
> and states he can walk less than a block before becoming short of
> breath. He is on Albuterol inhaler, which does help. States he has
> a family history of [COPD].

R. 143. Dr. Hate's notes reveal that Rea appeared healthy, well nourished, and comfortable. R.

143. Upon physical exam, Rea was able to toe and heel walk and he accomplished the squat

testing. R. 143. Regarding the respiratory system, Dr. Hate's notes show that "[a]ir entry is

diminished all over." R. 144. Dr. Hate's impressions were as follows:

> Emphysema/COPD, pulmonary function tests show obstructive
> disease. This is probably a result of 2 pack a day cigarette
> smoking and he needs to quit smoking. Regular use of
> bronchodilators may be helpful. He will have difficulty in any
> strenuous physical activity due to his respiratory problem.

R. 145.

**RFC – 11/30/01**

On November 30, 2001, a non-examining state agency consultant completed a Physical

Residual Functional Capacity Evaluation ("RFC") on Rea. R. 146-52.[7] The state agency

consultant made a primary diagnosis of emphysema and with no secondary diagnosis. R. 146.

The state agency consultant opined that Rea's conditions and symptoms resulted in the following

---

[7] The completing physician did not sign the RFC or otherwise identify himself/herself.

exertional limitations: (1) occasionally lifting and/or carrying a maximum twenty pounds; (2) frequently lifting and/or carrying a maximum of ten pounds; (3) standing and/or walking about six hours in an eight hour workday; (4) sitting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling. R. 147. It appears that the state agency consultant based his/her conclusions on the available medical record to date. R. 147-48. The state agency consultant opined that Rea had no postural, manipulative, visual, or communicative limitations. R. 148-50. The state agency consultant opined that Rea should avoid concentrated exposure to extreme heat and humidity. R. 150. The state agency consultant further opined that the current medical records "substantiate" Rea's allegations and those allegations were "credible." R. 151.

### Denial of Claim and Upon Reconsideration

Rea's claims for disability benefits and SSI payments were denied on November 30, 2001 and December 28, 2001, respectively, and upon reconsideration. R. 29, 33, 43, 46.

### Dr. Sian

On July 25, 2002, Rea presented to Dr. Pio M. Sian for a consultative examination regarding his claims. R. 154.

> This is the first visit of this 50 year old white male because of: cough, shortness of breath, panting. He states, "Social Security sent me here." He states that he smoked since age 10, 2 or 3 packs of cigarettes per day.

R. 154. Dr. Sian's notes reveal that Rea was taking Atenolol and Atrovent at the time of his examination. R. 154. Dr. Sian's examination notes indicate that Rea was able to toe and heel walking, and could squat with difficulty. R. 155. Regarding the squat test, Dr. Sian's notes state the Rea was "[a]ble to do repetitive movements of 10 deep knee bends, but was real short of

breath afterward; took 10 [minutes] to regain breath." R. 155. Rea's respiratory system showed poor expansion with wheezing present. R. 156. Dr. Sian's impressions and diagnosis were: (1) [COPD]; (2) hepatomegaly; (3) history of vasovagal syncope, post coughing spell; (4) 12 years post fracture of right hip, post total hip replacement; (5) heavy smoking; (6) heavy ethanol usage; (7) history of ethanol gastritis; (8) general debility with de-conditioned state. R. 156. Dr. Sian's functional assessment was as follows:

> He should be able to stand or walk 2 hours or less, and be able to lift 10 pounds for 2 hours or less, but this could be greatly improved as soon as he quits smoking, and gets his pulmonary problem straightened out. He should be getting rehab as far as the alcohol abuse is concerned.

R. 157 (emphasis added). Dr. Sian also ordered a pulmonary function test ("PFT"). R. 156.

### PFT

On August 8, 2002, a spirometric PFT was conducted on Rea by the State of Florida's Department of Health. R. 159. The report states, however, that Rea was unable to do the test because Rea continued coughing and feeling dizzy. R. 159. Attached to the unsuccessful PFT report is a somewhat illegible test ticket. R. 162. No follow-up or assessments of the PFT are contained within the appellate record.

### RFC – 8/21/02

On August 21, 2002, Dr. David Z. Kitay, a non-examining state agency consultant completed an RFC. R. 163-70. Dr. Kitay made a primary diagnosis of COPD and a secondary diagnosis of hip replacement. R. 163. Dr. Kitay opined that Rea's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum twenty pounds; (2) frequently lifting and/or carrying a maximum of ten pounds; (3)

standing and/or walking about six hours in an eight hour workday; (4) sitting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling. R. 164. It appears that Dr. Kitay based his conclusions on the available medical record to date. R. 164-65. Notably, Dr. Kitay's review of the medical record to date also shows an unsuccessful PFT test. R. 165. Dr. Kitay opined that Rea had no postural, manipulative, visual, communicative or environmental limitations. R. 165-67. Dr. Kitay further opined that the medically determinable impairments were credible and consistent with Rea's symptoms. R. 168.

### Other Medical Records

The record contains treatment records from Primary Access to Health Clinic ("PATH") where Rea presented for approximately nine treatments for COPD from April 29, 2003 through July 23, 2005. R. 171-75, 280-86. The record also contains handwritten treatment and evaluation records from the infirmary when Rea was incarcerated in the county jail for approximately thirty days in January and February of 2002. R. 177-87.

### Administrative History

After Rea's claims were denied upon reconsideration (*see* supra p. 5), he requested a hearing before an Administrative Law Judge ("ALJ") and, on February 17, 2004, a hearing was held before the Honorable Albert D. Tutera. R. 41, 204-15. On May 24, 2004, ALJ Tutera issued an unfavorable decision denying Rea's claims. R. 14-21. Rea requested a review of the ALJ's decision, and on September 8, 2004, the Appeals Council denied review. R. 5, 10. On November 8, 2004, Rea appealed the final decision of the Commissioner in the district court. *See Rea v. Commissioner*, Case No. 6:04-cv-1629-KRS, Doc. No. 1 (M.D. Fla. 2004). On July 12, 2005, the Honorable Karla R. Spaulding granted the Commissioner's unopposed motion to

remand the case back to the ALJ for the "opportunity to obtain vocational expert testimony for the purpose of establishing whether a significant number of jobs exist in the national economy that . . . Rea can perform." R. 235; *Rea v. Commissioner*, Case No. 6:04-cv-1629-KRS, Doc. No. 23 (M.D. Fla. 2004). On August 3, 2005, the Appeals Council remanded the case to ALJ for a new determination. R. 239-40.

On November 30, 2005 the Honorable Philemina M. Jones, held a hearing on Rea's claims. R. 287-308. Rea was represented at the hearing by non-attorney Mary K. Wright. R. 287. Rea and Vocational Expert R. David San Filippo (the "VE") testified at the hearing. R. 287-308. At the hearing, Rea testified to the following:

- He was fifty-three years old at the time of the hearing;

- His disability is caused by shortness of breath after any exertion, stooping, bending, standing, or walking. Whenever he does any activity he has to use his inhaler, and his symptoms have gotten to the point where he has to use a motorized cart at the grocery store. He can walk for only ten minutes before having to sit down and use his inhaler. It takes him ten to fifteen minutes before he can resume normal breathing. He cannot sit for prolonged periods because he gets congested. He can only sit for a maximum of two hours.

- He has tried everything to quit smoking and he finally quit smoking in September of 2005;

- He has not consumed alcohol since 2001;

- He has not worked since 2002;

- He can prepare light meals, he does not help with the dishes, cleaning the kitchen or yard work, but he can do his own laundry. He goes to the grocery twice a month and uses a motorized cart;

- He has COPD and currently takes Albuterol, Flovent, a nebulizer, and antibiotics;

- He has to use his inhaler two or three time during the day and every two or three hours while sleeping;

8

- He has a low energy level and if he walks out to the driveway he becomes tired;

- He continues to suffer from intermittent syncope which sometimes occurs four to six times a week;

- He can tend to his personal needs such as bathing and dressing; and

- He has not been hospitalized for syncope or COPD since 2001.

R. 291-303. The ALJ's examination of VE was as follows:

> Q. In accordance with the prior RFC I'm going to assume that I have an individual between the ages of 48 and 54 who has the education and past relevant as described for the claimant. I'm going to assume that the individual could perform light work with the additional restrictions of being to only occasionally climb, balance, stoop, crouch, kneel or crawl and he needs to be in an environment which is free of extreme heat or humidity. Could he perform any of his past relevant work or any other work?
>
> . . .
>
> A. He would not be able to perform his past relevant work. There is work in the light range, light and sedentary range that he could perform.
>
> . . .
>
> A. Cashier . . . unskilled, 2.9 million national and 155,000 in Florida. An additional one, assembler of small parts . . . . Fifty percent of these are considered to be light in nature, 50 percent are considered sedentary. . . An additional one would be stock checker . . . light, unskilled . . . .

R. 305. Ms. Wright then addressed the VE and the following exchange occurred:

> ATTY. If . . . the person described in that hypothetical rather than the light, he, he has mentioned that as far as being able to be on his feet, walking and on his feet about 10 minutes at a time and then after that he would have to take about 10 minutes to regroup and take his breath. Would that have any affect on those three jobs?
>
> VE. Yes, ma'am. Well, light work by definition requires the ability for an individual to lift frequently 10 pounds, occasionally 20 pounds and stand or walk, be able to stand or walk up to two hours at a time, six hours in an eight-hour

> day. Based upon what you just indicated he wouldn't be able to do that so he would not be able to do light, the full range of light work.

R. 305-06. Ms. Wright then brought Dr. Sian's functional assessment, particularly the part of the assessment where Rea was unable to do 10 deep knee bends without becoming very short of breath and needing ten minutes to return to normal breathing, to the attention of the ALJ. R. 306.[8]

On January 200, 2006, the ALJ issued a decision denying Rea's application for disability and SSI finding the following:

1. Rea meets the nondisability requirements for a period of disability and Disability Insurance Benefits, and is insured for benefits through the date of decision;

2. Rea has not engaged in substantial gainful activity at any time since the amended alleged onset of disability;

3. Rea's COPD and status post hip replacement, in combination, are considered "severe";

4. Rea's medically determinable impairments do not meet or medically equal one of the listed impairments;

5. The undersigned finds that Rea's allegations regarding his limitations are not totally credible;

6. Rea has the RFC to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and/or walk for about six hours each, in an eight hour workday. He can occasionally climb, balance, stoop, crouch, kneel and crawl. He is unable to do repetitive knee bending. There are no manipulative, visual or communicative limitations. There are environmental restrictions to avoid all exposure to

---

[8]The ALJ then added to her initial hypothetical question stating the following:

> If I add to my initial hypothetical that the person would be unable to do repetitive actions such as knee bending would that change your response?

R. 306-07. The VE answered that it would not change his response because it was based on light exertional levels. R. 307. The ALJ then asked Ms. Wright where the exhibit she was referring to was located, and Ms. Wright directed the ALJ to Dr. Sian's functional assessment. R. 307.

heat and humidity;

7. Rea is unable to perform any past relevant work;

8. Rea is a "younger individual" and beginning February 9, 2002, an "individual closely approaching advanced age";

9. Rea has a limited education;

10. Transferability of job skills is not an issue in this case;

11. Rea has the RFC to perform a significant range of light work;

12. Although Rea's exertional limitations do not allow him to perform the full range of light work, there are a significant number of jobs in the national economy that he could perform;

13. Rea has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

R. 230-231. The ALJ considered the records and RFC evaluations of each of the above described hospitals, clinics, infirmaries, and physicians. R. 226-27. Specifically regarding Dr. Sian's evaluation and assessment, the ALJ stated the following:

> Pio M. Sian, M.D. completed a consultative medical examination on July 25, 2002. Dr. Sian's impression and diagnosis revealed [COPD], hepatomegaly, a history of vasovagal syncope, post coughing spell, twelve year post fracture of right hip, post total hip replacement, heavy smoking and ethanol usage, history of ethanol gastritis, general debility with de-conditioned state. His functional assessment stated that the claimant was able to stand or walk two hours or less, and able to lift 10 pounds for two hours or less, but that this would be greatly improved as soon as he quit smoking and got rehabilitation as far as his alcohol abuse was concerned. On August 8, 2002, Dr. Sian attempted to conduct a [PFT] of the claimant. The claimant was unable to complete the test, as he tried, began coughing and stated that he felt dizzy.

R. 227 (emphasis added). In determining Rea's RFC the ALJ stated the following:

> [T]he claimant's allegations of disabling pain and limitations are not fully credible. The medical evidence indicates that he can

move about and use his four extremities in order to perform activity on a sustained basis. The claimant has sought very little medical treatment despite his allegations of severe pain and [COPD]. The claimant's recent treatment is sparse and infrequent. He attends the health department once every four to six weeks. The claimant completed and submitted a list of his medications list which show he was prescribed an Albuterol inhaler and Advair for emphysema. He has not experienced any medication side effects that would affect his ability to work. He has not requested or been referred for additional physical therapy or pain management treatment. He has not reported any difficulty regarding his abilities to bathe or dress himself. His daily activities currently appear to be self-restricted only. He previously admitted to performing housework, shopping, cooking and taking care of children. He has not been instructed to lie down during the day or to restrict his activities in any manner. He is able to sit hours at a computer sending/opening emails. He admitted that he continued to smoke until August or September 2005. He had not been compliant with his own treating physician's instructions to quit smoking. <u>Dr. Pio M. Sian reported that his condition could be greatly improved as soon as he quit smoking</u>. The [ALJ] also notes that the claimant attempted to perform work as a telephone directory deliverer in 2001. This work activity is normally performed at the heavy exertion level.

. . .

Accordingly, the undersigned finds the claimant retains the following [RFC]: He can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. He can sit, stand and/or walk for about six hours each, in an eight hour workday. He can occasionally climb, balance, stoop, crouch, kneel and crawl. He is unable to do repetitive knee bending. There are no manipulative, visual or communicative limitations. There are environmental restrictions to avoid all exposure to extreme heat and humidity.

. . .

<u>This [RFC] is consistent with the state agency consultant opinion of November 30, 2001 and not inconsistent with the opinions of Dr. Hate or the state agency consultant of August 21, 2002, with the addition of the environmental and postural restrictions</u>.

R. 228 (emphasis added).

Rea requested review by the Appeals Council of the ALJ's decision denying him disability benefits, and on July 7, 2007, the Appeals Council denied review. R. 216-219. On

September 10, 2007, Rea timely appealed the Appeals Council's decision to the United States District Court. Doc. No. 1. On March 10, 2008, Rea filed a memorandum of law in support of his appeal. Doc. No. 15. On May 8, 2008, the Commissioner filed a memorandum in support of his decision that Rea is not disabled. Doc. No. 16. The appeal is ripe for determination.

## II.     THE PARTIES' POSITIONS

Rea assigns four errors to the Commissioner's decision: (1) the Commissioner erred in determining that Rea had the RFC to perform light work because the ALJ did not adequately consider or weigh the functional assessment of Dr. Sian; (2) the ALJ erred because the hypothetical question posed to the VE did not accurately reflect Rea's limitations as set forth in Dr. Sian's functional assessment; (3) the ALJ erred in determining that Read did not meet the requirements of the Listing of Impairments 3.02A when a PFT test results revealed that Rea met the listing; and (4) the ALJ erred by finding Rea's testimony and allegations concerning his subjective limitations were not entirely credible. Doc. No. 15.

The Commissioner argues that substantial evidence supports his decision to deny Rea's claims. He maintains that: (1) the ALJ specifically discussed and addressed Dr. Sian's opinion in the credibility analysis and it is implicit from the ALJ's decision that she did not accept that portion of Dr. Sian's functional assessment indicating that Rea could only stand or walk for two hours or less and lift only ten pounds for two hours or less; moreover, a remand for the ALJ to explain the weight given to Dr. Sian's opinion would be a waste of judicial and administrative resources (2) the ALJ properly relied on the VE's testimony and the hypothetical question was supported by substantial evidence; (3) Rea failed to introduce evidence that his impairment met or medically equaled any listed impairment because the PFT was not sufficient; and (4)

substantial evidence exists to support the ALJ's determination that Rea's testimony and allegations were not entirely credible.  Doc. No. 16.

## III.   LEGAL STANDARDS

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the

14

meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534. A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404,

Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for

the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.

18

1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[9] In contrast, sentence six of 42 U.S.C. § 405(g) provides:

---

[9] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[10]

## IV.    ANALYSIS OF ALLEGED ERRORS

**Whether the ALJ Erred In Not Weighing or Considering Dr. Sian's Functional Assessment.**

Rea argues that the ALJ erred in determining that Rea has the RFC to perform a significant range of light work. Doc. No. 15. As set forth above, the ALJ determined that Rea has the RFC to sit, stand and/or walk for six hours each in an eight hour workday; and lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently. R. 230-31. Dr. Sian, a consultative examining physician, determined that Rea should be "able to stand or walk 2 hours or less, and be able to lift 10 pounds for 2 hours or less, but this could be greatly improved as soon as he quits smoking. . . ." R. 157. Dr. Sian's opinion is clearly inconsistent with the RFC

---

[10] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id.* The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

as determined by the ALJ. In the decision, the ALJ fails to specifically state what weight she afforded to Dr. Sian's opinion. The ALJ does specifically describe Dr. Sian's opinion and, in the credibility section of her decision, the ALJ even mentions that Dr. Sian "reported that [Rea's] condition would be greatly improved as soon as he quit smoking," but the ALJ fails to provide any weight or consideration to Dr. Sian's underlying functional assessment. In the ALJ's final analysis, she simply states that her RFC determination is consistent with the two RFC's and the opinion of Dr. Hate. R. 228.

Rea argues that the ALJ's failure to specifically state what weight she gave to the opinions of Dr. Sian or state why she accepted the opinions of two non-examining physicians over that of Dr. Sian was error. Doc. No. 15 at 8-9. The Commissioner maintains that the ALJ properly considered Dr. Sian's opinion and implicitly rejected the functional assessment with substantial evidence supporting that rejection. Doc. No. 16.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability. The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of an examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it

is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[11]

As set forth above, the ALJ clearly accepted and gave great weight to some of Dr. Sian's opinions, such as Rea's condition would greatly improve as soon as he quit smoking, but she fails to state what weight, if any, she gave to the most important part of Dr. Sian's opinion, the functional assessment. While it is evident that the ALJ must have rejected Dr. Sian's functional assessment, the ALJ failed to provide any reason(s) for that rejection. Contrary to the Commissioner's arguments, such a failure is reversible error. *See Sharfarz*, 825 F.2d at 279.

The ALJ based her RFC on the opinion of one examining physician, Dr. Hate, and two non-examining state agency consultants. R. 228. Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The opinion of Dr. Hate does not provide a detailed assessment of Rea's functional capacity, but specifically states that "[h]e will have difficulty in any strenuous physical activity due to his respiratory problem." R. 145. Dr. Sian provided a somewhat more detail functional assessment and, while it may not be entirely consistent with that of Dr. Hate's, some reason based on substantial evidence must be given for relying on one over the other. Otherwise, the ALJ would be left solely with the opinions of two non-examining state agency consultants, the opinions of which do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). Moreover, an RFC from a non-examining physician that contradicts the opinions of a treating or examining physician does not establish the good cause required to accord less than considerable

---

[11] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

weight to such opinions. *See Spencer*, 765 F.2d at 1094; *Johns v. Bowen*, 821 F.2d 551 (11th Cir. 1987).

Accordingly, the Court is unable to determine whether substantial evidence supports the ALJ's decision. *Hudson*, 755 F.2d at 786; *Falcon*, 732 F.2d 829-30. Thus, the case must be remanded under sentence four of § 405(g) for the ALJ to make specific findings regarding the weight accorded to the opinion of Dr. Sian. If the ALJ discounts the opinions of any treating or examining physician he/she should state specific reasons for doing so.[12]

**V.      CONCLUSION**

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **REVERSED and REMANDED under sentence four of Section 405(g)** for further proceedings consistent with this opinion. The Clerk is directed to enter a separate judgment in favor of Rea and close the case. [13]

**DONE and ORDERED** in Orlando, Florida on March 19, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

---

[12] *See* supra n. 9.

[13] Because the ALJ's decision is reversed and remanded under sentence four of § 405(g), it is unnecessary to reach the other arguments raised by Rea. However, the Court notes that largely illegible results of an unsuccessfully completed PFT test cannot, in anyway, be considered substantial evidence sufficient to prove that an impairment meets a listing level.

Shea A. Fugate
Law Office of Shea Fugate
1800 Pembrook Dr., Suite 300
P.O. Box 940989
Maitland, Florida        32794

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801